Good morning. Welcome to the United States Court of Appeals for the Sixth Circuit. I'd like to remind you, if you represent the appellant, that it's helpful to us if you tell us how much time you want to reserve for rebuttal, even if you've only already cleared it with the clerk. We'd like to know. So with that, the clerk may call the first case. Good morning, Your Honors. May it please the Court, my name is Scott Salmon. I am the attorney for Officer James Scheeler in this matter. I'd like to reserve four minutes for rebuttal. In the district court's decision, Judge DeLotte granted the defendant's summary judgment as to all claims except plaintiff's false arrest and imprisonment claims, finding that Officer Scheeler did not address false arrests in his qualified immunity argument. However, examination of defendant's initial motion for summary judgment demonstrates that qualified immunity was asserted and was raised with respect to the reasonableness of Officer Scheeler's action of arresting plaintiff, given the existence of probable cause, and I actually have the initial motion for summary judgment. I'll read a few excerpts to demonstrate how it was identified and raised. On page two of the motion for summary judgment, in the introduction, Officer Scheeler maintains he is entitled to qualified immunity with respect to plaintiff's 1983 claims because his interaction with plaintiff did not constitute any violation of a clearly established right. There is no differentiation between the excessive force violation and a false arrest violation at that point. In analyzing a qualified immunity defense, the motion goes on to further state that a court should first determine whether the plaintiff has shown a violation of a constitutionally or statutorily protected right, and second, whether the right is so clearly established that a reasonable official would understand that what he is doing violates that right. To succeed on a 1983 claim, plaintiff must show, one, defend an act under the color of state law, and two, deprive plaintiffs of their rights under the U.S. Constitution. We have to look at the facts and the lack most favorable to the plaintiff in this situation, right? That's correct, Your Honor, and I believe that all the facts cited with respect to the false arrest are put, they're taken from plaintiff's deposition specifically. Well, under her version of the facts, your client arrested a 14-year-old girl who, you know, sort of mouthed off to him, whether he heard it or not is the question, and didn't leave the festival in order to call and collect her younger sister, which she explained to him. Now, that is, those are the, I think, the most of the material facts that support her version of what happened, and I'm hard-pressed to find anything in that version of facts that could constitute a basis for an arrest. Well, first of all, you have to consider the fact that Officer Sheeler was dispatched to the festival in response to an officer needs assistance call, and it wasn't just him being dispatched, it was multiple agencies. You've got Greenhills, Wyoming, and Hamilton. So how does that have anything to do with it? He arrested this particular individual. Well, it does with respect to having probable cause for the arrest, and I'll get into that with respect to the actual. So he arrives on the scene. There's a number of people shadowboxing. He is tasked with crowd control and dispersing the people, and at that point, that's where you then look at the facts and a light must favor to plan it for. She testifies that Officer Sheeler, doing his lawful duty to try and disperse the crowd and get these people to leave the festival at 11 p.m., 11.30 that night, tells her specifically that she needs the festival a first time. At that point, he tells, she begins to walk towards the exit, and at some point, she stops. She stops right before leaving the festival in order to call her sister, and Officer Sheeler once again tells her for a second time, you need to leave the festival. Well, what, I mean, there's also, taking the facts most favorable to her, there's evidence he grabbed her arm, he got her cell phone away from her. I mean, what would, what would, what, what part of her conduct constitutes a basis for an arrest? Well, he, her conduct, her conduct, first of all, we're talking, this isn't just 10 people, we're talking, this is 40 to 100 people, it's loud, there's kids, pockets of kids all over the place, it's chaotic, there's already been one fight, and later on, there's actually fights that occur after people are pushed out of the festival, but, but they're trying to control the scene. There's kids shadowboxing, they're trying to go ahead and get these people out of the festival, because it's over, and she's not complying, and, and the officer, does he want to go ahead and pick on a 14-year-old girl? No. She's creating such a disturbance, and acting in such a. That's your version of the facts. Well, that's, that's. I mean, your client said she was pitching a three-year-old temper tantrum, that's not her version of the facts. But it's, her facts include, her testimony states that she did not comply with the officer's lawful orders. She said she had to wait for her sister, younger sister, right? That's true. You admit that part. Because you have to make a call, doesn't mean that you should not be able to comply with the lawful command from an officer. It's still a lawful command, and she's still under the obligation to, to go ahead and. I believe Judge Rogers has a question for you. I think the discussion so far is interesting, but I'm not sure we should get to it. The lower court relied, or addressed your argument that the diversion controlled the issue of whether there was probable cause, is that right? That, yes, but it didn't. Right, and the district court, normally in these cases, we try to figure out what facts the district court assumed there was a, there was a genuine issue, alright? But we don't have that here, because the district court said, you didn't brief the issue of whether the facts established that he had probable cause. And I was going to get to that at the beginning. Well, is that just wrong? I think that, we did raise the issue of qualified immunity. Why did you make these, I'm not asking whether you raised qualified immunity, I assume you raised qualified immunity because you said that diversion precluded any further examination of whether there was probable cause. I'm just asking whether you made the arguments that you're making right now to the district court, because you're asking us to reverse the district court on what the district court, at least, would say you never presented to the district court, which is an argument that apart from the diversion issue, there was probable cause. If you look at page 13 of the initial motion for summary judgment, the caption says, the actions of Officer James Sheeler while arresting plaintiff was reasonable. Well, just, is there a text that discusses that? I'm reading from the actual motion for summary judgment. Is the rule in Ohio Southern that you file a motion and then you file a memorandum in support of the motion? Yes, and... Where is it in your memorandum? I spell out facts that address the fact that probable cause existed. Right in that same section. Just tell us what pages it's on and then we can check it out later. Page ID... Or Judge Rogers probably has the technical capability to check it out now. Page ID, 713, which plaintiff admitted she said something to the effect of, fuck the police, when she suspected, was overheard by Officer Sheeler and caused him to follow her. Plaintiff admitted that after the fight was broken up, she failed to comply with multiple orders issued by Officer Sheeler. Plaintiff admitted she did not comply with Officer Sheeler's direct commands to leave the festival and she also admitted she failed to comply with Officer Sheeler's verbal commands to give him her cell phone. Plaintiff testified she wasn't even looking at Officer Sheeler when he issued those orders and admitted that it was even possible that Officer Sheeler told her that if she didn't leave, she was going to be arrested. Those facts don't speak to the excessive force claim. They speak to the probable cause issue that it existed. And then I further go, well the motion further goes on to say that then it addresses the disposition of the criminal matter. But ultimately at the end, it says Officer Sheeler was in the middle of a chaotic situation on July 28, 2012. Certainly his actions and alleged minimal uses of force were objectively reasonable given the totality of the circumstances, which is what the approach which is utilized to establish probable cause. And if it was just addressing excessive force at that point, there'd be no reason to say certainly his actions and separate it with minimal uses of objective force. At the end, the motion states that the totality of the circumstances on July 28, 2012, established the actions of Officer James Sheeler were objectively reasonable and did not constitute a Fourth Amendment violation. It doesn't spell out that it was only in regards to an excessive force violation. It talks about any violation, and that is consistent throughout the entirety of the motion. Do you agree that there was not probable cause to arrest her for disorderly conduct? You're just talking about failure to follow the officer's directions. I would disagree with that given State v. Font, where a defendant was convicted of disorderly conduct under 2917.11a5 when he loudly protested a driver's arrest and had to be escorted away twice by the arresting officers from the scene of the arrest. In upholding that decision, the court stated that under these circumstances, the trial court properly found that the violation of RC 2917.11a5 was based on the defendant's persistent conduct rather than what he said. Similar to the Font case, probable cause existed with respect to disorderly conduct for Officer Sheeler's arrest of plaintiffs for not only what she said, but also her persistent conduct in creating disturbance and not complying with the orders in the middle of a potentially hostile situation. And furthermore, when you're addressing probable cause, you're not just done with respect to whether there's probable cause only for disorderly conduct. Probable cause can also be established and need not be even closely related to or based on the same conduct as an offense at the time of the arrest. In this case, obstructing official business was the other charge, which clearly the officer's there, he's called to action, he's performing lawful duty, she's not complying. There's definitely a probable cause with respect to that charge, which she wasn't charged with. But I also believe that there was probable cause with respect to disorderly conduct as well. This section of your motion that you referred to talks about the force that was exerted, but I'm not seeing too much discussion of whether there was probable cause. It addresses both the excessive force as well as the false arrest claim. Where's the false arrest? Well, the facts that speak to the probable cause. Where, I'm asking? Maybe you can find it before your rebuttal argument. That'd be useful, thank you. Your time is up. Thank you. Mr. Poole? Yes. Thank you, your honors. Good morning, may it please the court. My name is Colin Poole, and I represent the respondents DD and SD. The core of this case is whether there was probable cause for SD's arrest. Defendant failed to brief this issue below, and this failure impacts this court's jurisdiction. He says they did brief it. Well, he did not actually brief it. Yes. So as he mentioned, there's these cursory assertions of qualified immunity against any constitutional violation. And, you know, if we look at the motion for summary judgment, there's nothing in there about the issue of probable cause. It's all about excessive force, except for this collateral judicial estoppel argument, which we think the district court has already addressed in full. I can talk about that in more detail if you'd like. But there's nothing in that brief that says, that looks, let me put it this way, there's nothing in either brief that even defines what probable cause is. You know, and probable cause... It's just got facts that incidentally support the excessive force claim Correct. Is that what it is? Correct, yes. In both briefs, there's nothing about probable cause except to the extent of, there's one sentence in the reply brief that says the aforementioned arguments have already established probable cause. But he doesn't explain how. It's just a cursory legal assertion with no support, no citations. Can we decide the issue of qualified immunity here, or do we have to send it back down and raise it again before the district court? Well, we believe that, you know, there's no subject matter jurisdiction here because the court never actually denied qualified immunity. They said there was no constitutional violation. I'm sorry? They said there wasn't enough evidence. The issue was raised as to whether there was a constitutional violation, right? Right, but the core of this... That's the first step of qualified immunity, right? Sure, but the core of this claim, false arrest, is the probable cause issue, and there's no briefing on that issue whatsoever, but there's dozens of pages here. We're not going to reverse because you didn't raise the argument without getting into a jurisdictional... I'm sorry? We could just simply say that they have raised an issue that we don't need to address because it wasn't raised below without getting into whether we have jurisdiction to do that. Well, you have to have jurisdiction for this case to be... I understand, but it looks like they have jurisdiction. Okay, well... It's just easier to argue that they haven't raised it. Well, I think the concern there for us is there's Sixth Circuit case law that says failure to present an issue to the district court forfeits the right to have the argument addressed on appeal. That's from... In any kind of case. It's true, but... You can't get reversed based on what you haven't raised below. Right, and then also... I understand it sounds good to dress it up in jurisdictional terms, but... Okay, well, I understand that, Your Honor. But I want to remind Your Honor that the Sixth Circuit has also said... He could still raise qualified immunity if we say we don't have jurisdiction, right? Well, at that point, I believe... If this court denies jurisdiction, I believe it goes back to status quo ante in the district court and it's up to really the district court to say did he raise the issue in a timely manner. That's my understanding. I'm not sure how you guys would view it, but I want to remind this court, you know, the Sixth Circuit has said our function is to review the case presented to the district court rather than a better case fashioned after a district court's unfavorable order. And I think this case really fits that fact pattern. You know, below the Chambers has a 20-page limit for Brees. Both of the defendants' Brees hit exactly 20 pages without going into this argument about probable cause at all. They relied on this estoppel argument that we think is, and the district court agrees is, you know, faulty. The defendants did not move to exceed the page limit below. Instead they had this cursory search of qualified immunity against any violation. We would have jurisdiction, for instance, to hear the the the issue about preclusion or it's disposed the probable cause issue is disposed by the diversion. That was raised below, right? Yes, you have jurisdiction to address that question. If we ruled one way on that there would be qualified immunity. So it seems a little bit technical to say that we don't have, we have jurisdiction to discuss that issue, but we don't have jurisdiction to discuss another issue. Well, perhaps it is technical, but you know, these technical rules matter. They're there for a reason. And, you know, not only did he not try to exceed the page limit, he also didn't move to reconsider in light of qualified immunity. In one of the cases he cites for support, Klein v. Long, that's exactly what happened. The defendants moved you know, moved for summary judgment. The court denied it, so they moved to reconsider in light of qualified immunity. The court denied it again, and then the district, sorry, the circuit court said, we have jurisdiction now. Because it's been squarely placed before the district court, we can talk about this. So he's basically arguing that the cursory assertion without any development is enough to force the district court's ruling. And we just don't think that's enough, because what it does is encourages exactly what happened here. I can just put one sentence in my brief and cover myself, and then we can have the Sixth Circuit deal with this conclusively without any district court determination. And I think that kind of gamesmanship is really uncalled for. We shouldn't be encouraging that as a policy matter. This court exists to correct errors, not hear issues for the first time, and so declining to assess an issue not briefed is not typically an error. And so I think that's really how we view this jurisdictional issue. But, you know, moving aside from that, what does this court have jurisdiction to decide if we have jurisdiction at all? It's only over the purely legal question of whether the undisputed facts in the light most favorable to the plaintiff fail to establish a prima facie violation of a clearly established right. That's from Berryman v. Rieger, Sixth Circuit case. So, like I said, the core of this case is probable cause. That's the entirety of the core of a false arrest claim. And so what is probable cause? He didn't even define it for the district court. It exists if the facts and circumstances known to the officer warrant a prudent man in believing that the offense has been committed. And so he's trying to tell you that, you know, these facts where she wasn't compliant, she said some vulgar language, those things, as if it were a checklist, you know, check the boxes and now we have probable cause. No, he has to actually tie these facts to elements of an offense. I don't think that's happening. Are we talking about probable cause for disorderly conduct or probable cause for failure to obey a law officer's command? Well, there's no statute failure to obey an officer's command isn't the statute. He's saying obstructing official business. And the elements of obstructing official business are no person without privilege to do so with purpose to prevent, obstruct, or delay the performance by a public official of any authorized act within the public official's official capacity shall do any act that hampers or impedes a public official. So she has to be acting with purpose to prevent, obstruct, or delay. And she has to do an act that hampers or impedes. And neither of those things happen here. If we look at the facts in the light most favorable to the plaintiff and we don't dispute these facts, SD was at a church festival where a brief one-punch fight had occurred. Dana, her friend, says it was loud and cafeteria-like. But, you know, what church festival isn't loud and cafeteria-like? SD approached Officer Sheeler with info about this fight which, again, was one-punch. She was rebuffed and told to leave. According to Dana, that's her first command to leave. She then walked away with her friend, Dana, said something to the effect of fuck the police at a normal volume. Now, there's disposition testimony that says that neither of them really remember how loud she was talking. But Dana does say that she didn't think the officer overheard anything. And so, you know, we can draw a favorable inference there in that, you know, she wasn't directing it in any loud volume. And I want to address one thing that was said earlier. The, uh, I believe Judge Gibbons, you said that she had mouthed off to the cop. The cop actually admits that it wasn't directed at him at all. He totally admits that. So, Dana says that what SD said didn't shock her. We then, you know, overhearing Sheeler approached her, demanded she leave the festival, threatened to arrest her, didn't explain why. That's the second time. So there's only been two times that she's been asked to leave the festival. SD told him she needed to call her sister and pulled out her phone. Sheeler ordered her to give him her phone, threatened to break it. Sheeler knocked the phone out of her hand, breaking it, and then arrested her, injuring her in the process. Sheeler testified she was not a threat at the deposition. He says that. She was not a threat. And then Dana testified that SD didn't do anything wrong. So if we take all those facts together, all we have to establish probable cause, according to the defendant, is that she used vulgar language and that she wanted to call her sister. And I said, you know, he makes that seem like that's a checklist of things to check off and then we go on to probable cause. And he tries to support that proposition with all these cases, like he mentioned State v. Fent. But if we look at all these cases in the totality of the circumstances, which is what we're required to do for probable cause, we see that it's a lot of different things combined together. Like running from officers, combined with prolonged vulgar and abusive language outbursts, physically obstructing the officers, interfering the questioning of witnesses, refusing to calm down when asked, refusing to answer questions. For example, in State v. Fent, the case he cited earlier, What was she charged with when she went to court? She was charged with disorderly conduct. And the indictment actually, I'm not sure if it's an indictment or not, but the charging document says that she That was a juvenile court, right? Juvenile court, yes. Said she made unreasonable noise or offensively coarse utterance without authorization to do so. And so, if that's the only basis for the charge, and there's no evidence that she was being vulgar and abusive except for his testimony, I don't think that's the proper basis for granted qualified immunity. We have to be looking at things in the light most favorable to her, and there's evidence where we can draw the inferences that she wasn't talking in a loud manner. She was talking to her friend. And furthermore, sorry, State v. Fent, it's not just they said that persistent conduct can lead to a probable cause for an arrest, but the persistent conduct in State v. Fent was there was a automobile driver's arrest. This person had walked up and started interfering. An officer escorted him 30 to 40 yards away. He comes back. Officer escorts him 30 to 40 yards away again, and he comes back again. And so, that's much more egregious than just standing by the exit to the festival. It's not like she was in the middle of the festival interfering with things. She's right by the exit. So, just ignoring the demands to leave the festival to try to get to her sister, we don't think there's any disorderly conduct or obstructing official business there. And there's Ohio Court of Appeals case law that says, a police officer is expected to tolerate a certain level of uncooperativeness, especially in a free society in which the citizenry is not obliged to be either blindly or silently obeisant to law enforcement. And we think that rationale holds particularly true when juveniles are involved. Because juveniles don't necessarily understand the consequences of their actions. Did you have a question? I'm sorry. Oh, okay. And furthermore, because he talks about the vulgarness of this language, then we have to consider how the First Amendment plays into this case. And I think it's pretty clear from the case law we saw in the brief and the case law that we gave in the 28J letter that the First Amendment protects the content of what she was saying, to the extent that it criticizes the police. And furthermore, this case, Sandal v. Larian, has some facts that are analogous to our case. In that case, the truck passenger, or a truck passenger, sorry, shouted, fuck you and made obscene gestures towards abortion protesters as a truck drove past. An officer pursued the truck and arrested the passenger for disorderly conduct. There was no evidence that anyone was offended. No one acknowledged the behavior except the officer, just like in this case. The court held the speech was protected, that it was not fighting words, and there was no probable cause. So, I think this case law makes it very clear that we have to take the content of S.C.'s speech out of the picture and focus solely on her volume, her demeanor, her actions in the totality of the circumstances. And all we have is that she said, fuck the police, and that she twice ignored demands to leave the festival. And there's no offense that the defendants pointed to where that meets the elements. And I think, you know, if we look at that idea that we have to meet the elements of an offense to establish probable cause, that just ties back into why this jurisdictional issue is important. I mean, if the case is really that complicated, because if you don't tell the court what offense you've established, then is it the court's obligation to go through the entire revised code and try to find  I mean, he has to provide some of that analysis to this court. Just to sum up, the defendant's version is supported by no other witnesses in terms of this, you know, she's throwing a three-year-old temper tantrum in the middle of the festival, none of that is supported by the other witnesses. So the core of this case is really in credibility determinations that are up to a jury. And in fact, Thackeray v. City of Columbus, Sixth Circuit said, the existence of probable cause is a jury question unless there is only one reasonable determination that is possible. And we believe there are multiple reasonable interpretations, and so this case and this appeal should be denied. Thank you. Appellees want to talk about or a plaintiff wants to talk about how there's gamesmanship with respect to not raising the issue of qualified immunity with respect to false arrest, and that they were somehow prejudiced with respect to that failure, so to speak, but they clearly weren't. In their introduction of their memorandum in opposition, they begin, defendants begin their thesis for summary judgment from the standpoint of assuming that they had probable cause to arrest Plaintiff S.D. and that they are entitled to qualified immunity. Well, the problem is, I looked back at that brief, and the problem is that a fair reading of the brief is that you did claim there was probable cause, but not because of the underlying facts, only because of the juvenile court disposition, and that was the argument that was rejected. And so, I mean, he has a point that, you know, you've taken a totally new tact with the Court of Appeals, and we're supposed to review issues that were brought to the court, and you know, it's not about prejudice to the other side, it's about the judicial resources, at least from our point of view, I mean, it certainly has something to do with that, but it also has to do with the judicial resources required to review and prepare for such a case, when the prudent thing might be to do, to say, well, you know, I lost on that, and I'm going to continue to go forward in the district court, I mean, there's been a good deal of expense to the parties accompanying the appeal, there's certainly been expense to us, in terms of getting ready, I mean, so, I mean, there's something to think about there. Well, I would say though that you can't say that I didn't raise it, or it wasn't raised in the in the brief, I think facts were right, at what point do you, is it not raised? Once it's raised, it's not a question of whether it's raised, the question is whether it's fairly presented to the district court, and I feel the same way that, probably more strongly even than Judge Gibbons just articulated, because in addition to everything she said, you're talking about telling a district court, you were wrong, we're reversing you, for reasons that weren't fairly presented to you, and you can say, well, that didn't hurt the parties, but it hurts the system, when we don't, when we have to decide something for the first time, we take a careful look at how the district court would, for instance, evaluate whether these statutes were probably violated or not. Was there probable cause to violate this statute? Was there probable cause to violate the other statute? That's what the arguments are about here, but I, where? You were going to point out where those statutes discuss whether they're violated in your memo. The statutes are not discussed. How can we talk about whether there was probable cause without even mentioning the ordinances? That just seems like, now you want us to look at the statutes, the ordinances, but you don't present them to the district court, and we're supposed to tell the district court, you were wrong for not evaluating those statutes the way we're evaluating them now, that just doesn't, that isn't how the system works. Well, plaintiff was put on notice, I mean, there's a whole section that addresses the problem. You're talking about addressing arguments to the district court. Arguments you're making now, which, candidly, they have some force, but you tell me, here's a great argument, but we didn't make it to the district court, and I'm not arguing it here to affirm on alternative grounds, I'm arguing it here to reverse the district court on a ground that wasn't, on an argument that wasn't even presented to them. That's a tough way to litigate your case. I respectfully disagree, but as far as the fact that it was raised, and once it's raised, the burden is on them to show that it doesn't apply. You know, and Judge Rogers did articulate the test correctly, but the, I mean, saying that probable cause existed as a matter of law because of the juvenile court disposition is not the same as raising the issue you sought to raise here. Well, I think that if you look at the motion for summary judgment, it does raise facts that cause one to say, question, or it actually establishes facts that establish that there was an existence of probable cause. Should it have been more clear? Yes, obviously. Once I get Judge DeLotte's order back, yeah, it should, I wish I would have made it more clear, but I think it was raised. Okay, your time is up. We appreciate very much the argument both of you have made, and we'll consider the matter carefully. Thank you very much, Your Honor.